
RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 10/10/08

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| Hayes | Civil Action No. 6:07-1034 |
| versus | Judge Tucker L. Melançon |
| Hartford Life and Accident Ins. Co. | Magistrate Judge Methvin |

## MEMORANDUM RULING

Before the Court is a motion for summary judgment filed by defendant, Hartford Life and Accident Insurance Company ("Hartford") [Rec. Doc. 18] and plaintiff, Dale H. Hayes', opposition thereto [Rec. Doc. 20]. For the reasons that follow, Hartford's motion will be granted.

*I. Background*

In this action, plaintiff seeks reinstatement of a Flexible Premium Adjustable Life Policy, No.0901400918U, issued to him on or about August 20, 1984 by Hartford (the "Policy"), which lapsed on May 17, 2007 due to plaintiff's failure to pay the premium due on the Policy. Plaintiff's Complaint requests that "this policy be reviewed and evaluated along with the attached documents and the Court find that the payments by [plaintiff] were in accordance with the insurance contract and that [Hartford] be ordered to continue to receive the annual payments ... and that the policy be honored and approved by the Court...." *R. 20.*

The Record provides the following undisputed facts. The Policy states on the second page, "FLEXIBLE PREMIUM ADJUSTABLE LIFE POLICY" and states as follows:

Flexible Premiums

Premium payments are flexible. You may choose the amount and frequency of premium payments. The actual amount and frequency of

payment will affect the Cash Value[1] and could affect the amount and duration of insurance provided by this policy.

*Exh. 2-A, Policy at P-11.*

As to premium payments, the Policy further provides as follows:

Grace Period

If the Policy Value[2] on any Monthly Anniversary Day is not sufficient to pay the monthly Deduction Amount[3], a grace period will be provided. The grace period will be 61 days. During the grace period the premium sufficient for the required deductions will be accepted. Written notification will be sent to your last known address at least 30 days prior to the end of the grace period. If sufficient premium is not paid by the end of the grace period, the policy will terminate without value...."

*Id. at P-11.*

From 1985 through 1992, plaintiff paid an annual premium on the Policy in the amount of $9,537.76. *R. 18, Exh. 2, Hartford Affidavit.* On May 4, 1993, Hartford wrote to plaintiff and advised as follows:

.... Investment yields across the country, including those available in life insurance contracts, have witnessed a steady decline over the last several years..... Although ITT Hartford has been able to maintain a credited interest rate of at least 7.25 percent through the end of 1992, this is less than the rate credited when you purchased your policy.

In some instances, the resulting smaller cash values combined with a continuation of today's current interest rates are insufficient to maintain insurance protection for the full terms of the policies. In order to enhance [the Policy's] cash value, ITT Hartford suggests that you increase your premium to $11,445.00. . . . .

---

[1] The Policy defines "Cash Value" as, "the accumulation at interest of premium received minus expense charges and monthly deductions." *R. 18, Exh. 2-A, Policy at P-09.*

[2] "Policy Value" is defined in the Policy as, "the cash surrender value less all indebtedness." *Id.* The Policy defines "Cash Surrender Value" as, "the Cash Value less any applicable surrender charges." *Id.*

[3] "The Policy states that the monthly Deduction Amount" is: "a) the Cost of Insurance and applicable expense charges; plus, b) the cost of additional benefits provided by rider." *Id. at P-13.*

2

> Of course, you may continue to pay any premium you choose, including your current premium of $9,537.76. However, paying your new suggested premium will improve your policy's cash values and will help ensure that the future cash values and insurance will match the objectives established when you first purchased your life insurance policy.....

*Id.; R. 18, Exh. 2-B, H-183, May 4, 1993 Letter.*

Thereafter, from 1993 to 2006, plaintiff paid an annual premium on the Policy in the amount of $11,445.00. *R. 18, Exh. 2, Hartford Affidavit.*

While the Policy was in force, Hartford sent Annual Reports regarding the Policy to plaintiff which included the Policy's Cash Value at the end of each Policy year[4]. *Id.; R. 18, Exh. 2-C; H-105 - H-181.* The Annual Reports which Hartford sent to plaintiff in 1996, 2000, 2001, 2002, 2003, 2005 and 2006 advised Plaintiff as follows:

> Your account value decreased over the past twelve months; you should consider making additional payments into your policy. Our Customer Service Department can help you determine the level of payments that will properly fund your policy.

*R. 18, Exh. 2-C, H-149 - H-151, H-162 - H-181.*

The Annual Reports which Hartford sent to Plaintiff in 1998, 2001 and 2003 advised as follows:

> Since your last annual report, the interest rates credited to your policy were decreased. This means that your Cash Values will be less than they otherwise would have been.

*Id. at H-155 - H-158, H-165 - H-168; H-172 - H-175.*

On July 27, 2006, Hartford sent a Grace Period Notice to plaintiff in which stated:

> Your life insurance policy is in danger of lapsing. As stated in your insurance contract, you must pay premiums sufficient to keep this policy in force. Each month, Hartford credits your policy with interest, deducts the cost of insurance and, if applicable, other

---

[4] Hartford represents that it does not have a copy of the Annual Report for 1989 and that an Annual Report was not generated in 2004 because the Policy was in a Grace Period at the end of the 2004 Policy year. *R. 18.*

3

charges. As of your last monthly anniversary, there is insufficient value to pay these monthly costs.

If you wish to continue this valuable protection, it is important that you send the required premium due of $7,457.45 by September 15, 2006. If we do not receive this premium by September 15, 2006, your coverage will terminate at that time. In addition, you will no longer receive billing notices or have automatic bank deductions.

We would like to discuss this contract with you and answer any of your questions concerning the policy. We would be happy to review your policy's performance and help you to determine if any adjustments are necessary. Please contact our Customer Service Representatives at 800-243-5433. You may also contact us through E-mail at LifeService@Hartfordlife.com. When using this feature, please include you name, policy number, and telephone number.

*Id., Exh. 2, Hartford Affidavit; Exh. 2-D; H-099, July 27, 2006 Grace Period Notice.*

On August 7, 2006, Hartford received from plaintiff an annual premium payment on the Policy in the amount of $11,445.00, which amount was sufficient to prevent the Policy from lapsing. *R. 18, Exh. 2, Hartford Affidavit.* On August 17, 2006, Hartford sent plaintiff an Annual Report for the Policy year ending August 16, 2006. *Id.; Exh. 2-C, Annual Reports at H-179 - H181.* The 2006 Annual Report stated: "Based on the payment of the scheduled premium, the guaranteed interest rate and cost of insurance, your policy will expire on 11-16-2006." *Id. at H-180.* On August 16, 2006, the end of the 2006 Policy year, the Policy's Cash Value and Policy Value was $9,509.25. *Id. at H- 180.* As had been indicated to plaintiff in the 2006 Annual Report, the Policy Value was insufficient to pay the monthly cost of insurance and expenses by November 16, 2006. *R. 18, Exh. 2, Hartford Affidavit.* Therefore, on November 27, 2006, Hartford sent to plaintiff another Grace Period Notice indicating that, "[a]s of [the Policy's] last monthly anniversary, there is insufficient value to pay [the] monthly costs," and that Hartford must receive a premium payment in the amount of $8,440.36 by January 16, 2007 in order for the

Policy to remain in force. *Id.; Exh. 2-E, H-101, November 27, 2006 Grace Period Notice.* Hartford received from plaintiff a premium payment in the amount of $8,440.36 on December 19, 2006, and that amount was sufficient to prevent the Policy from lapsing. *R. 18, Exh. 2, Hartford Affidavit.*

On March 16, 2007, the Policy Value was once again insufficient to pay the monthly cost of insurance and expenses. *Id.* On March 27, 2007, Hartford sent to plaintiff another Grace Period Notice advising him that, as of March 16, 2007, the Policy Value was insufficient to pay the monthly cost of insurance and expenses and that Hartford must receive a premium payment in the amount of $8,468.08 by May 16, 2007 in order to keep the Policy in force. *Id., Exh. 2-F, H-102, March 27, 2007 Grace Period Notice.* The Grace Period Notice further advised Plaintiff that: "If we do not receive this premium by May 16, 2007, your coverage will terminate at that time." *Id.* Hartford did not receive the $8,468.08 premium payment required to keep the Policy in force and, therefore, the Policy lapsed on May 17, 2007, in accordance with the terms of the Policy. *R. 18, Exh. 2, Hartford Affidavit.* Hartford wrote to plaintiff on May 17, 2007 as follows:

> Your policy has lapsed because the values were insufficient to pay for the cost of insurance. Therefore, your insurance coverage is no longer effective. Your policy contains a reinstatement provision. You may want to refer to the reinstatement section of your contract.

*Id.; Exh. 2-G; H-103, May 17, 2007 Lapse Notice.*

The reinstatement section of the Policy states as follows:

> This Policy may be reinstated, provided:
>
> a) you make your request within 5 years;
> b) it terminated because a grace period ended without sufficient premium being paid;
> c) satisfactory evidence of insurability is submitted;
> d) you pay enough premium to keep the policy in force for 2 months; and

e) any policy loan is paid or reinstated.
R. 18, Exh. 2-A at P-12.

Plaintiff filed this action on May 10, 2007, seeking reinstatement of the Policy.

## II. Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[5] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.*, 477 U.S. at

---

[5] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson*, 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id*

### III. Analysis

Hartford filed this motion for summary judgment moving the Court to dismiss this action against it as there is no genuine issue of material fact as to plaintiff's claims against Hartford. Hartford asserts that it is not liable to plaintiff for the relief which he requests because the Policy lapsed on May 17, 2007, in accordance with the Policy's terms, after plaintiff failed to pay the premiums required to keep the Policy in force. Additionally, Hartford asserts, plaintiff has not met the Policy's requirements for reinstatement of the Policy.

La. R.S. 22:905 sets forth the requirements for declaring a life insurance policy forfeited or lapsed.[6] La. R.S. 22:905 provides, in pertinent part, as follows:

> **§ 905. Written notice required before lapsing life policies**
> No life insurer shall within one year after default in payment of any premium . . . declare forfeited or lapsed any policy issued or renewed . . . for non-payment when due of any premium . . . unless a written or printed notice stating:
>
> (1) The amount of such premium . . . due on such policy; and
>
> (2) The place where it shall be paid and the person to whom the same is payable, shall have been duly addressed and mailed to the person whose life is insured . . . at the last known post office address of such insured . . . .
>
> No policy shall in any case be forfeited or declared forfeited or lapsed until the expiration of thirty days after the mailing of such notice.

See La. R.S. 22:905.

The record in this case establishes that on March 27, 2007, Hartford sent a Grace Period Notice to Plaintiff stating that the Policy would lapse if he did not pay $8,468.08, the amount of premium due on the Policy to keep it in force, by May 16, 2007. Hartford mailed the Grace Period Notice to plaintiff at his last known address, and the Grace Period Notice included the name of the payee, Hartford, and Hartford's address. *R.18, Exh. 2, Hartford Affidavit; Exh. 2-F; H-102, Grace Period Notice.* Additionally, Hartford mailed the Grace Period Notice to plaintiff more than thirty days before the Policy lapsed. *Id.* It is undisputed that plaintiff received Hartford's March 27, 2007 Grace Period Notice. *R. 1 at ¶ 9.* Plaintiff failed to pay the $8,468.08 premium required to keep the Policy in force and the Policy lapsed on May 17, 2007, in accordance with the its terms.

---

[6] La. R.S. 22:905 was previously La. R.S. 22:177. La. R.S. 22:177 was renumbered as La. R.S. 22:905 by the Louisiana Legislature during the 2008 Regular Session. *See* 2008 La. Act 415 (S.B. 335).

Plaintiff asserts that the Policy did not lapse in May of 2007 because he paid the insurance premium "in August, 2006 to cover the year until August, 2007," and he filed this action before that period had passed. *R. 20.* The record indicates that plaintiff, an attorney, purchased a flexible premium adjustable life insurance policy, also known as universal life insurance, from Hartford.[7] The Policy in this case is stamped in large lettering, "FLEXIBLE PREMIUM ADJUSTABLE LIFE POLICY." *Policy.* "Flexible Premiums" on page 7 of the Policy state that while premium payments are flexible, the actual amount and frequency of payment could affect the amount and duration of insurance provided by the Policy. *Policy at P-11.* The "Grace Period" on page 7 contemplates that the Policy Value may not be enough to cover the monthly Deduction Amount for some month(s). If so, the Policy states that written notice of the payment of premium sufficient will be mailed to the

---

[7] While the parties do not cite, and the Court is unaware of, any applicable jurisprudence related to Flexible Premium Adjustable Life Insurance, in *Walker v. Metropolitan Life Ins. Co.,* 2008 WL 747105, 5 (D.Or.,2008), the District Court relied on the web site, www.pgafinancial.com, to determine the common industry definition of flexible premium adjustable life insurance. The court noted the following information:

> "Universal Life Insurance is like buying a mobile home in a mobile home park (but may be of much better or worse quality than a mobile home is thought to be). With such a mobile home, you buy the home at a fixed cost, but rent the land underneath; which means, as time goes by, you build equity but you can still have a rent increase on the space beneath. Similarly, universal life insurance usually has an element of equity build-up (cash value) but does not have guaranteed forever fixed internal policy costs and those costs may vary or increase over time."

*See Id.;* http:// www.pgafinancial.com/life.html.

The web site further explains that, "[w]ith universal life insurance, the price doesn't necessarily go up after the initial guarantee period. It depends on how much time has lapsed and how much cash value has accrued, based on the amount put in plus interest earned. At the point where the guarantee ends, the policy may continue on as is if interest rates have stayed high enough to earn good rates of return which have been left to add to the policy cash value and if the life insurance company has experienced good profits. Otherwise, if the policy has performed poorly, or wasn't structured for the long term, then the policy owner would have to increase premiums or else the internal increases in policy costs would be paid for out of the policy's cash value; which could mean the cash values disappear and the policy terminates. **That is the nature of universal life insurance. It is flexible, and depending on how it was designed, it can put a lot of the risk and rewards in the lap of the client instead of being borne by the life insurance company. Universal life insurance is so flexible that it can be a treacherous policy, or an excellent policy.**" *See Id.* (emphasis added).

insured which he must pay within a 61 day grace period or the "Policy will terminate without value." Thus, contrary to plaintiff's assertion that he paid the premium in August, 2006 to cover the year until August, 2007, the Policy provisions clearly anticipate that the policy-holder may be required to increase the amount and frequency of his premium payments in order to cover increases in the monthly fees associated with the insurance, which occurred in this case.

Plaintiff contends that now when he is in his mid-70s and on a limited income, Hartford is raising the premium charge to a level that he cannot afford to pay in order to force him from realizing the life insurance benefits. Neither plaintiff nor Hartford could foresee the financial circumstances of the current market 24 years ago. If he could have, plaintiff may not have chosen to purchase a life insurance policy with such risks.

Plaintiff further contends that Hartford failed to adequately inform him of the "monthly costs of his insurance expenses" in that it "quotes only total monthly figures, but no monthly expenses." *R. 20.* Page 3 of the Policy provides the "Policy Specifications." A review of those specifications provides the "maximum monthly cost of insurance rates per $1,000 of coverage amount" and the "expense charges per $1,000 for increases in coverage amount" which increase with the age of the policy-holder. *Policy, P-04 - P-08.* Thus, the record indicates that plaintiff was informed of the deductions from his premium payment for the monthly cost of the insurance as well as the fees or charges related to the Policy.

Moreover, the record indicates that throughout the life of the Policy, Hartford sent to plaintiff Annual Reports which included the Policy's Cash Value at the end of each Policy year. Those Reports informed plaintiff of the decrease in his account

value because of the decrease in interest rates credited to the Policy. In 2006 and 2007, Hartford sent Grace Period Notices to plaintiff which warned that his life insurance policy was in danger of lapsing unless he made a premium payment sufficient to keep it in force. The Notices explained that each month the Policy was credited with interest, but that the cost of insurance and other charges were deducted. Also, plaintiff received Annual Reports throughout the existence of the Policy. The Reports set out the interest credited and the insurance costs and fees or charges deducted each month during the year. Specifically, in March 2007, Hartford sent plaintiff a Grace Period Notice informing him that the Policy would lapse on May 17, 2007 unless he made a premium payment before that date. As plaintiff never made another premium payment, the Policy lapsed.

Based on the foregoing, the Court finds there is no genuine issue of material fact that the Policy lapsed due to plaintiff's failure to pay the premiums to keep the Policy in force. Additionally, the Policy may not be reinstated as plaintiff has not submitted to Hartford satisfactory evidence of insurablility nor has he paid enough premium to keep the policy in force for 2 months as required under the terms of the Policy. *See infra, Policy "Reinstatement."* Accordingly, Hartford's motion for summary judgment will be granted.